IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CRIMINAL NO. 23-CR-909-MIS |
| ) | |
| OTHON JORGE ZAMARRIPA, ) | |
| ) | |
| Defendant. ) | |

UNITED STATES' NOTICE OF EXPERT WITNESS TESTIMONY

Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), the United States provides the following disclosure concerning expert testimony that the Government will seek to introduce under Federal Rules of Evidence 702, 703, and 705. The United States intends to offer the testimony of the below experts. The United States reserves the right to supplement this disclosure and offer additional testimony by these experts or other expert witnesses. The United States further reserves the right for the experts to amend or adjust opinions and bases therefore based on information perceived by or made known to them before or during trial.

1. FBI Supervisory Special Agent Daniel O'Donnell

    A. Anticipated Testimony

Supervisory Special Agent (SSA) Daniel O'Donnell from the Federal Bureau of Investigation ("FBI") currently serves as the Unit Chief of the FBI's Behavioral Analysis Unit–3 (BAU-3), which is part of the FBI's National Center for the Analysis of Violent Crime. The United States has asked SSA O'Donnell to testify in this case to educate the jury on grooming behaviors and dynamics. SSA O'Donnell will cover the following general background material in his testimony:

The FBI's Behavioral Analysis Unit defines grooming as a "dynamic process utilizing a constellation of behaviors aimed at gaining the cooperation of the child to achieve sexual gratification for the offender and/or others." The process of grooming a child for sex includes identifying a potential target, establishing a connection, gathering more information, filling needs, exploiting vulnerabilities, and lowering inhibitions.

The process of grooming has a powerful impact on minors and persons involved in the minor's life. It is an intentional process of manipulation to gain access to, build trust with, and create the opportunity for time alone to sexually abuse a minor. Grooming sets the stage for sexual abuse to occur, facilitates the continued abuse of a victim, prevents or delays disclosure, and manifests in counterintuitive victim behaviors. It also assists in maintaining the secrecy of the abuse.

"Identifying a potential target" is how an offender chooses his victims, including assessing access to the minor or availability of the minor, characteristics of the minor that are desirable to the offender which may include developmental factors, physical factors, age, sex, social skills, and vulnerability factors.

"Establishing a connection" is how an offender gains access to the minor, establishes a relationship with the minor, and begins to develop trust with the minor and his/her caregivers.

In "gathering more information" the offender attempts to learn more about the minor, the adult supervision and the adult relationships in their lives, and the vulnerabilities and challenges that exist for the minor and caregivers.

"Filling needs and exploiting vulnerabilities" is the process by which the offender increases his access, level of trust, relationship, and favorable reputation with the minor, his/her caregivers,

and the community. This process includes filling identified needs and capitalizing on the minor and/or caregivers' vulnerabilities.

"Lowering inhibitions" is the process by which an offender breaks down boundaries in preparation for the sexual advance/sexual act. This can include gradual efforts to desensitize the minor to increasing levels of physical touch by the offender, offers to educate the minor about sexual activity, the introduction of alcohol or drugs to induce physiological impairment, showing sexually explicit images or videos, and/or discussing sex acts or sexual activity to sexually arouse the minor and/or normalize sexual activity.

Grooming techniques can include giving a minor gifts and support, treating a minor as special, permitting otherwise forbidden activities or special privileges, isolating a minor from his/her social support, and gradually increasing sexually explicit talk about sex through jokes. The minor may feel a sense of responsibility or guilt for their contact with the offender because they responded positively to things such as attention, gifts, or physical touch from the offender. They may feel embarrassment or shame that they were "tricked" into sexual contact. They may fear that the gifts, resources, and privileges provided by the offender will cease to occur if they disclose the sexual contact to a trusted person.

To facilitate the process of grooming, offenders may use vernacular consistent with the age-range of their intended victim and express interest in the topics proposed by the intended victim, despite their lack of genuine interest in the topics and/or common use of the vernacular.

Grooming is a dynamic process that can be adapted by the offender over time and tailored to address the needs, vulnerabilities, and responses of the intended victim. The offender can groom the minor over the phone (e.g., voice/text), online, and/or in person. Grooming typically takes time, but the length of time and relative success depends on access to the minor, the frequency and

length/duration of the engagements with the minor, protective factors present in the minor's life, persons present during the grooming process, and the minor and his/her reactions to the grooming process. The grooming process is used not just to enable the offender to abuse the minor but also to ensure that the victim does not disclose the abuse or delays in disclosing the abuse, and/or to prevent discovery of the abuse by third parties. It may also lead to cognitive distortions by the offender, such as rationalizing their abusive behavior.

Delayed disclosures of childhood sexual abuse are common. Fear of not being believed or consequences related to the disclosure, shame attendant with the abuse, and/or the victim's lack of realization that what has occurred is abuse and/or feelings about the offender can cause delayed disclosures.

This is especially true when the offender holds a position of power, authority, or trust over the minor or in the community, such as a coach, teacher, or religious figure. This position of trust or authority is another aspect of the grooming process and depending on the level and type of power or authority, it can also have an impact on the victim's family and/or the community. It enables the offender to garner trust among the minor's caregivers and community and may cause those around the minor to doubt the abusive conduct occurred. This position of power, authority, or trust can also have an impact on the victim as a result of the abuse, such as causing the victim to question belief systems and/or engage in problematic behavior.

SSA O'Donnell will cover the following specific material in his testimony:

1) the definition of grooming;
2) the stages of the grooming process;
3) examples of the behaviors offenders engage in during the grooming process;

4) the impact the grooming process can have on the minor, caregivers, the community, and the offender himself/herself; and

5) delayed disclosures.

SSA O'Donnell will not testify about the credibility of any other witness. He has not met or interviewed any witnesses. He has not been provided with or viewed any statements of the victim, witnesses, or investigators. It is his practice not to discuss specific facts of the case with the prosecution to wall him off from facts of a case which he will provide testimony on. SSA O'Donnell has not drafted any reports in connection with this case.

B. Qualifications, Publications, and Prior Testimony

SSA O'Donnell's qualifications, including, *inter alia*, his educational background, work experience, prior trainings attended, prior testimony he has provided as an expert witness within the last four years, and his publications are contained within his *curriculum vitae*, which is attached as Government's Exhibit 1[1].

C. Witness's Approval & Signature

Pursuant to Rule 16(a)(1)(G)(v), SSA O'Donnell has approved this disclosure as evidenced by his signature below.

Dated: 2/21/25

/s/
Daniel O'Donnell

2. Heather Kimbell – Child and Adolescent Forensic Interview Expert

Heather Kimbell is a child and adolescent forensic interviewer (CAFI) with the FBI in the Victim Services Division of the Child Victim Services Unit working from the Albuquerque Field

---

[1] For this filing the experts' addresses, telephone numbers and email addresses have been redacted. Unredacted copies of the expert's *curricula vitae* will be provided to defense counsel.

Office. Ms. Kimbell is a licensed clinical social worker. As a CAFI, Ms. Kimbell has conducted approximately 1,300 child and adolescent forensic interviews.

        A.   <u>Qualifications, Publications, and Prior Testimony</u>

Ms. Kimbell's qualifications, including, *inter alia*, her educational background, work experience, and prior court testimony within the last four years are contained within her *curriculum vitae*, which is attached as Government's Exhibit 2. Ms. Kimbell has no publications in the last ten years.

        B.   <u>Anticipated Opinion Testimony</u>

Ms. Kimbell's testimony will be focused on victim responses to victim behavior (in contrast to Special Agent O'Donnell's testimony, which focuses on offender behavior rather than victim responses to said behaviors). Ms. Kimbell is expected to testify that it is not uncommon for children that have experienced sexual abuse to delay disclosure; likewise, disclosure may be a gradual process that can take months or even years. Some of the factors that may impact disclosure are interplay of child characteristics, family environment, community influences, and societal attitudes. She will testify that there are many reasons why a child might not disclose. These may include implicit or explicit threats, gifts or bribes, promises to the child, feelings about the perpetrator, a lack of opportunity, a lack of understanding of child sexual abuse, and/or the relationship with the perpetrator and other family members. Impediments to disclosure may include perceived repercussions for the family and/or the perpetrator.

Children who experience intrafamilial abuse may be less likely to disclose and more likely to delay disclosure than those abused by an unknown offender. Short- and long-term consequences of the abuse for the child may include symptoms of PTSD, behavioral and

emotional changes, which can include self-blame. The stability of the home environment and the relationship of the non-offending caregiver may impact the likelihood of the disclosure.

Ms. Kimbell will testify based on her training, experience, and professional observations that it is not uncommon for a victim of childhood sexual abuse to withhold some details of their abuse. Additionally, that it is not uncommon for the disclosure to take place over time.

Finally, Ms. Kimbell is expected to testify that the cognitive and developmental level of the child may impact the child's ability to disclose their experiences with sexual abuse. Ms. Kimbell's testimony about delayed disclosure will assist the jury in understanding the context of the reports giving rise to charges in this case.

Ms. Kimbell will not testify about the credibility of any other witness. She has not met or interviewed any witnesses. She has not been provided with or viewed any statements of the victim, witnesses, or investigators. It is her practice not to discuss specific facts of the case with the prosecution to wall her off from facts of a case which she will provide testimony on. Ms. Kimbell has not drafted any reports in connection with this case.

  C. <u>Witness's Approval & Signature</u>

Pursuant to Rule 16(a)(1)(G)(v), Ms. Kimbell has approved this disclosure as evidenced by her signature below.

Dated: 2/21/25

                      /s/
                      Heather Kimbell

3. <u>Las Cruces Police Department Senior Police Officer and Homeland Security Investigation Task Force Officer Max L. Weir</u>

  A. <u>Anticipated Testimony</u>

Max L. Weir is a Senior Police Officer with the Las Cruces Police Department (LCPD) and a Cyber Crimes Investigator and Senior Digital Forensic Examiner, Internet Crimes Against

Children (ICAC) Investigator for Southern New Mexico, Department Homeland Security (HSI) Task Force Officer (TFO).

HSI TFO Weir will testify as an expert in forensic examination of electronic devices. HSI TFO Weir has specialized training and experience in forensic analysis of computers and cellular phones. HSI TFO Weir assisted in the investigation of this case by performing forensic extractions and/or examinations of devices belonging to the defendant, including two Apple iPhone cellular telephones, several SanDisk memory cards, a SanDisk memory stick, a SanDisk Cruzer Glide, a Western Digital Easy Store, a Sony Alpha 7 camera, a ProGrade SDXC memory card, a Sony Tough memory card, two Corsair Windows hard drives, a Hewlett Packard laptop, a generic memory card, an Apple iPad, and a Microsoft Surface. HSI TFO Weir also reviewed returns from the search warrants obtained for defendant's Dropbox, Google, and iTunes accounts.

Additionally, HSI TFO Weir attempted to conduct review and/or extraction of two Apple iPhone cellular telephones and an Apple MacBook Pro belonging to the defendant; however, he was unsuccessful due to password protections on the devices. An Apple iPhone was previewed and determined to belong to the defendant's mother, and a JVC Camcorder was examined, but did not contain internal storage. Accordingly, these items were not processed.

Cellebrite's Inseyets Physical Analyzer and Universal Forensic Extraction Device (UFED), including the UFED Reader, were used to extract and analyze data from several devices. UFED Reader reports, generated by the Inseyets Physical Analyzer software, allow users to share a copy of a device's contents with individuals who do not have access to the full software. Similarly, Magnet AXIOM's Portable Case feature, a counterpart to the UFED Reader report, enables users to share device content with those lacking a full version of AXIOM. This feature was also utilized to examine the contents of some devices. Both UFED Reader reports

and AXIOM Portable Cases have been made available—and remain accessible—for defense counsel to review.

The government does not believe that *all* HSI TFO Weir's testimony is expert testimony, but includes the summary of all his testimony out of an abundance of caution and to provide clarity to the defendant and the Court regarding the scope of his anticipated testimony. The United States may offer testimony and evidence regarding the following information and opinions from HSI TFO Weir:

1) HSI TFO Weir's training and experience in conducting forensic examinations on various electronic devices and the reasons extractions sometimes cannot be performed on devices or material sometimes cannot be pulled from the device.

2) The steps HSI TFO Weir undertakes to conduct a forensic examination of a cellular device and to ensure the evidence is maintained properly and securely.

3) Cellebrite is a forensic tool that law enforcement commonly uses to process forensic devices. Cellebrite produces a reliable copy of the contents of the digital device in evidence in a format that can be searched and tailored into reports. A reliable copy of several of the defendant's cellular phones was made in this case. Cellebrite was designed in a way that prevents alteration of data that is stored on a device during the extraction process. Cellebrite can, but does not always, recover deleted content from cellular devices.

4) Magnet AXIOM is a forensic tool that law enforcement commonly uses to examine digital evidence from mobile, cloud, computer, and vehicle sources. A reliable copy of several of the defendant's devices were made in this case. Magnet AXIOM was designed in a way that prevents alteration of data that is stored on a

device during the extraction process, and it can, but does not always, recover deleted content from devices.

5) HSI TFO Weir attempted to conduct extractions of two of the defendant's Apple iPhone cellular telephones and an Apple MacBook Pro, but he was unable to extract the data from these devices because of password restrictions.

6) HSI TFO Weir's knowledge of the interstate and foreign commerce nexus of cellular telephones, including whether the defendant's cellular telephones were manufactured outside of the State of New Mexico and therefore traveled in interstate and foreign commerce.

7) HSI TFO Weir utilized Cellebrite to review extractions of the defendant's Apple iPhones and iTunes return.

8) HSI TFO Weir utilized Magnet AXIOM to review extractions of the defendant's other devices, as well as Dropbox and Google returns.

9) HSI TFO Weir's general knowledge about metadata, which is data that gives information about other data.

10) HSI TFO Weir's knowledge of the metadata from search engines utilized to view pornographic images and videos.

11) HSI TFO Weir's knowledge of the meaning of recovered file locations and their use in the operating system of devices in determining the existence of deleted information.

12) HSI TFO Weir's knowledge of the importance of device logs files in determining user activity even when the original activity is deleted.

B. <u>Qualifications, Publications, and Prior Testimony</u>

HSI TFO Weir's qualifications, including, *inter alia*, his educational background, work experience, prior trainings attended, and prior testimony he has provided as an expert witness within the last four years are contained within his *curriculum vitae*, which is attached and marked as Exhibit 3. HSI TFO Weir has no publications in the last ten years.

C. <u>Witness's Approval & Signature</u>

Pursuant to Rule 16(a)(1)(G)(v), HSI TFO Weir has approved this disclosure as evidenced by his signature below.

Dated: 2/21/25

/s/
Max L. Weir

4. <u>Jana Williams, MD</u>

A. <u>Anticipated Testimony</u>

The United States may call as a witness Dr. Jana Williams, a board certified pediatrician with more than twenty-five years of experience in the medical field. She is part of a medical group practice, Full Bloom Pediatrics, in Las Cruces, New Mexico.

The United States anticipates that Dr. Williams will testify at trial primarily as a fact witness, as she has been the primary care provider for the victims, Jane and John Doe. However, out of an abundance of caution and to provide clarity to the defendant and the court regarding the scope of her testimony, the United States provides this notice that Dr. Williams's testimony may also include her expert opinions or specialized knowledge based on her education, training, and professional experience. It is anticipated that Dr. Williams may provide expert opinion testimony regarding Jane and John Doe's current medical status and interpretation of medical documentation of treatment Jane and John Doe have received that corroborates the charged conduct in this case.

Dr. Williams may cover the following specific material in her testimony:

1) The relevant medical histories of Jane and John Doe;

2) The current medical status of Jane and John Doe as it relates to the charges, including the impact the alleged abuse has had on Jane and John Doe; and

3) Interpretation of medical records related to Jane and John Doe's medical histories.

B. Qualifications, Publications, and Prior Testimony

Dr. Williams's qualifications, including, *inter alia*, her educational background, professional experience, professional affiliations, awards and honors, and prior testimony she has provided as an expert witness within the last four years are contained within her resume, which is attached and marked as Government's Exhibit 4. Dr. Williams has no publications in the last ten years, and has not drafted any reports in connection with this case.

C. Witness's Approval & Signature

Pursuant to Rule 16(a)(1)(G)(v), Dr. Williams has approved this disclosure as evidenced by her signature below.

Dated: 2/21/25

/s/
Dr. Jana Williams

5. Applicable Law

The above information regarding the training, experience, and qualifications of the proposed witnesses in their fields, within the context of the testimony proffered, demonstrates that the testimony of these witnesses is both relevant and reliable. If any of the testimony outlined above is challenged, the United States respectfully submits that, pursuant to *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999), the Court should exercise its "special gatekeeping obligation" and should determine that the testimony is admissible as the witnesses

have "a reliable basis in knowledge and experience" in their field. *See United States v. Charley*, 189 F.3d 1251, 1261 (10th Cir. 1999); *Velarde*, 214 F.3d at 1208 (quoting *Kumho Tire*, 526 U.S. at 149). The United States respectfully submits that if the testimony outlined above is challenged, the Court should treat this notice as a proffer on the training, background, and education of the witness and allow their testimony.

In this case, there are no novel scientific principles at play and adequate assurances of reliability are set forth above. Accordingly, if any of the testimony set forth above is challenged, this Court should rule that this evidence is admissible based on the pleadings. In the alternative, even if the Court decides that some form of hearing is necessary regarding some of the testimony, the Court may reserve ruling on the testimony's admissibility until it is offered at trial. *See United States v. Nichols,* 169 F.3d 1255, 1262-63 (10th Cir. 1999) (no abuse of discretion to decline to hold a preliminary evidentiary hearing), *cert. denied*, 528 U.S. 934 (1999).

WHEREFORE, the United States respectfully provides notice of its intent to offer the above-described expert testimony in its case-in-chief at trial because the proposed testimony has a "reliable basis in the knowledge and experience" of the witness's discipline.

    Respectfully submitted,

    HOLLAND S. KASTRIN
    Acting United States Attorney

    *<u>Electronically Filed 2/21/2025</u>*
    JONI AUTREY STAHL
    JACKSON K. DERING V
    Assistant United States Attorneys
    200 N. Church Street
    Las Cruces, NM 88001
    (575) 522-2304 - Tel.
    (575) 522-2391 – Fax

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification to defense counsel of record.

***Electronically Filed 2/21/2025***
JONI AUTREY STAHL
Assistant United States Attorney