IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,    )
    )
          Plaintiff,    )
    )
      vs.    )     CR No. 23-909 MIS
    )
OTHON JORGE ZAMARRIPA,    )
    )
          Defendant.    )

UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS AND FACTUAL
CORRECTIONS AND UNITED STATES' SENTENCING MEMORANDUM

The United States respectfully requests the Court overrule Othon Jorge Zamarripa's objections and factual corrections to the Presentence Report (PSR), Doc. 233, and adopt the PSR as written. Doc. 229. In overruling Defense's arguments, the Court should sentence the defendant to a guideline sentence of life in prison.

I.    Response to Defendant's Objections to the PSR and Factual Corrections

The United States Probation Officer (USPO) accurately summarized information provided by Homeland Security Investigations (HSI) and Doña Ana County Sheriff's Office (DASO), as well as information obtained from multiple forensic interviews conducted with the two minor victims in the case. Doc. 229 at ¶¶ 5-19. The facts are also based on trial testimony from the two minor victims, HSI Special Agent (and case agent) Stephani Legarreta, and others. *Id.* This information reflects multiple, independent, and corroborated accounts of the defendant's conduct, particularly the trial testimony of the minor victims and the case agent. *Id.* The verdict clearly demonstrated that the jury found

their testimony credible. Accordingly, the Court can give the information contained in the PSR appropriate weight and consideration as materially true and reliable.

Under 18 U.S.C. §§ 3553 and 3661, the Court may consider all information concerning the defendant's background, character, and conduct when imposing sentence, regardless of whether that conduct resulted in a conviction. *See United States v. Rodriguez-Delma*, 456 F.3d 1246, 1253 (10th Cir. 2006) (sentencing court may rely on PSR facts unless the defendant shows they are *materially untrue* or *unreliable*) (emphasis added). The record supports the reliability of the facts included in paragraphs 5-19 of the PSR ("The Offense Conduct"), whereas the defendant's objections consist only of conclusory denials, which is legally insufficient to challenge a PSR fact. Docs. 229 and 233.

The United States will briefly address defendant's objections to paragraphs 5-19 of the PSR ("The Offense Conduct").

1. Paragraph 5 essentially outlines the various sources of information obtained. Doc. 229 at ⁋ 5. The defendant's objection describes how the reports "proved untrustworthy regarding several issues…regarding child sexual abuse material" but fails to identify any false information contained in the paragraph. Doc. 233 at 1. The Court should overrule the objection.

2. Paragraph 7 describes the minor victims' forensic interviews. Doc. 229 at ⁋ 7. The defendant's objection notes "multiple statements…that were exculpatory" that were not included which leads to an "inaccurate fact scenario" but fails to identify those statements. Doc. 233 at 1. The Court should overrule the objection.

3. Paragraph 8 describes statements the minor female made in her forensic interview about specific incidents. Doc. 229 at ⁋ 8. The defendant objects because the PSR does not include the fact that no photographs or images were located. Doc. 233 at 1. The United States does not object to including the fact that no images or videos of the minor female were located.

4. Paragraph 9 describes statements the minor female made in her forensic interview about specific incidents as well as statements made during her trial testimony. Doc. 229 at ⁋ 9. The defendant objects because "no Princess Peach images or videos were found." Doc. 233 at 2. The United States does not object to including the fact that no Princess Peach images or videos were found with the caveat that trial testimony clearly demonstrated that the defendant was careful to conceal his pornography searches and that other corroborating evidence that supported the minor female's account *was* found. The Court should overrule the objection because the information in the PSR is not misleading or bootstrapping.

5. Paragraph 10 describes statements the minor female made in her forensic interview about specific incidents as well as statements made during her trial testimony. Doc. 229 at ⁋ 10. The defendant objects because the paragraph "makes a credibility determination that the testimony was not contradicted by Ms. Margarita Miranda." Doc. 233 at 2. The Court should overrule the objection. The evidence introduced at trial – particularly the timeline of the defendant's phone records relating to the date in question – as well as the minor female's testimony, contradicted Ms. Miranda. In

3

addition, Ms. Miranda was asked point blank on the stand if the defendant sexually abused the minors. She stated that she didn't know. Clearly, the jury determined that the government's evidence was more credible than Ms. Miranda's testimony.

6. Paragraph 12 describes statements obtained from the 2017 investigation into the minor female's herpes outbreak. Doc. 229 at ¶ 12. The defendant objects that the information is "unadmitted and materially unreliable." Doc. 233 at 2. The information was self-suppressed by the government at trial to avoid a trial within a trial. However, the Court can and should consider the information which was detailed in reports during the 2017 investigation. The defendant also notes "the polygraph was not used as it presumably was not helpful." *Id.* There is no mention of a polygraph in the paragraph, so it is unclear how that information relates to the objection. *Id.* However, defendant's objection is factually incorrect – the polygraph was helpful in that it demonstrated deception by the defendant. However, the United States did not seek to introduce the polygraph as they are generally inadmissible at trial, and the entire herpes incident was not a part of the government's case in chief. Moreover, the outbreak of herpes and medical notes indicated penetration. The Court should overrule the objection and properly consider how this prior incident further corroborates the minor victim's testimony and the timeline of abuse.

7. Paragraph 13 describes statements the minor female made in her forensic interview about specific incidents as well as statements made during her

trial testimony. Doc. 229 at ⁋ 13. The defendant again objections to the exclusion of "multiple statements…that were exculpatory" but fails to identify those statements. Doc. 233 at 2. The Court should overrule the objection.

8. Paragraph 16 describes evidence introduced at trial that corroborated statements made by the minor victims during their trial testimony. Doc. 229 at ⁋ 16. The defendant objects that there was corroboration. Doc. 233 at 2. This objection is directly contrary to the trial evidence and should be overruled.

9. Paragraph 17 describes evidence introduced at trial that corroborated statements made by the minor victims during their trial testimony. Doc. 229 at ⁋ 17. The defendant's objection is unclear but seems to be that the allegations from 2017 are contrary to the timeline described in the paragraph. Doc. 233 at 2. The United States self-suppressed the 2017 incident and superseded the indictment to narrow the time frame for allegations directly related to the charges. There is nothing factually incorrect about the statements in the PSR paragraph 17. Defendant's further objection that the expert was "nothing more than prosecution mouthpiece restating the theory of the case" is directly contrary to the trial evidence from blind experts and should be overruled.

10. Paragraph 18 describes the defendant's arrest, execution of search warrants, and evidence obtained, as well as the services offered to the victims. Doc. 229 at ⁋ 18. The defendant objects that no mention was made that "no

incriminating nor corroborating information" was found on the devices when reviewed. Doc. 233 at 2. This objection is directly contrary to the trial evidence and should be overruled given all the extensive corroborating evidence presented at trial, including information obtained from the defendant's devices and accounts. However, the United States would not object to including the fact that no images or videos of production as described by the minor female were discovered during the investigation.

11. Paragraph 19 describes minor victim testimony at trial. Doc. 229 at ⁋ 19. The defendant "maintains his innocence and objects to the 'summary' that is biased and based on inaccurate information." Doc. 233 at 3. The paragraph accurately summarizes trial testimony from the minor victims. The jury – based on the verdict – clearly found the testimony credible. The Court should overrule the objection and consider the horrific acts the minor victims described in detail on the stand, particularly given their consistent testimony during cross examination.

The Tenth Circuit has made clear that a defendant must make "specific allegations of factual inaccuracy" before the Court is required to resolve the matter. *United States v. Pedraza*, 27 F.3d 1515, 1530 (10th Cir. 1994). Where the defendant does not make such specific allegations, the district court is not required to make findings. *See United States v. Garcia*, 24 F. App'x 872, 876 (10th Cir. 2001) ("To successfully invoke the fact-finding obligation of Rule 32(c)(1), the defendant must make specific allegations of factual inaccuracy."). Other circuits apply the same principle: "A mere objection to the finding in the presentence report is not sufficient. The defendant has an affirmative duty to make a

6

showing that the information in the presentence report is unreliable and articulate the reasons why the facts contained therein are untrue or inaccurate." *United States v. Terry*, 916 F.2d 157, 162 (4th Cir. 1990). Without such a showing, "the court is free to adopt the findings of the [PSR] without more specific inquiry or explanation." *United States v. Mueller*, 902 F.2d 336, 346 (5th Cir. 1990). The Tenth Circuit applied this rule directly in *United States v. Smith*, holding that because the defendant "failed to make any allegations of factual inaccuracy, the district court properly accepted the findings from the presentence report." *United States v. Smith*, 160 F. App'x 704, 707–08 (10th Cir. 2005).

Because paragraphs 5-19 are based on consistent, corroborated evidence and because the defendant has not made any specific factual showing undermining its reliability, these objections should be overruled and adopted as written.

The defendant also raises objections to paragraphs 27, 29, 37, 39, 48, and 49 of the PSR. Doc. 233 at 3. The United States will briefly address these objections as well.

1. Paragraphs 27 and 37 describe the two-level enhancement pursuant to U.S.S.G. § 2G1.3(b)(3)(A) for use of a "computer, namely an iPhone; or a PlayStation to access the internet" the defendant used to show both minors pornographic videos used to coerce them. Doc. 229 at ¶¶ 27, 37. The defendant objects "to this objection as it is duplicative," "subsumed by the offense guideline," and "presumably the only way to commit the offense of conviction." Doc. 233 at 3. Defendant's arguments are contrary to the guidelines. The PSR is correctly calculated, and the Court should overrule the objection.

2.  Paragraphs 29 and 39 describe the eight-level enhancement pursuant to U.S.S.G. § 2G1.3(b)(5)(A) and (B) because the minor female had not attained the age of 12 at the time of the offense conduct. Doc. 229 at ¶¶ 29, 39. The defendant alleges it "is unclear how old Jane Doe" was and it was not shown beyond a reasonable doubt. Doc. 233 at 3. This argument is directly contradicted by the evidence at trial and the record. The minor female was 10 years old when she was forensically interviewed about the allegations. She was 10 years old when the complaint was filed in this case. She testified at trial that she was 10 when the last incident of abuse occurred. The defendant has been in custody since the minor female was 10 years old and had no contact with her after that time. The objection is provably incorrect, and the Court should overrule it.

3.  Paragraph 48 describes the enhancement for the defendant being a repeat and dangerous offender against minors pursuant to U.S.S.G. § 4B1.5(b)(1). Doc. 229 at ¶ 48. The defendant objects because the "offense is a pattern and there is not any evidence outside of the offense of conviction." Doc. 233 at 3. Again, these arguments are contrary to the guidelines. The instant offense is clearly a "covered sex crime." *See* U.S.S.G. § 4B1.5(b)(1), Application Note 2 (it is an offense against a minor under chapter 117 of Title 18 United States Code). The defendant clearly engaged in a "pattern of activity involving prohibited sexual conduct." *See* U.S.S.G. § 4B1.5(b)(1), Application Note 4(B) (the defendant engaged in prohibited sexual conduct with a minor on at least two separate occasions). The

guidelines specifically allow consideration of acts that "occurred during the course of the instant offense" or "resulted in a conviction." *See* U.S.S.G. § 4B1.5(b)(1), Application Note 4(B)(ii). The PSR is correctly calculated, and the Court should overrule the objection.

4. Paragraph 49 indicates that the defendant has not demonstrated any acceptance of responsibility to warrant any reduction pursuant to U.S.S.G. § 3E1.1. Doc. 229 at ₱ 49. The defendant objects to the "trial tax imposed" that is "contrary to the 6th Amendment." Doc. 233 at 3. The defendant alleges the defendant was "partially correct" given the Court's dismissal of Count 3 (erroneously described as "an extremely inflammatory allegation"). Again, the defendant's objection is contradicted by the record. The PSR is correctly calculated based solely on the two remaining counts of conviction – coercion and enticement of two minor victims. Count 3 had no impact on the defendant's correctly calculated guideline range. There is no "trial tax" in the application of the guidelines. The defendant maintains his innocence and argues that no reduction for acceptance of responsibility should be applied. This objection is baseless and should be overruled.

II.    <u>United States' Sentencing Memorandum</u>

The United States urges to the Court to sentence the defendant to a guideline sentence of life in prison. Othon Jorge Zamarripa engaged in egregious and horrific conduct that spanned approximately five years. This conduct involved vaginally and anally raping the minor female from the time she was between 3 and 5 years old until she was 10. He also forced her to masturbate him and perform fellatio on him. He anally raped the minor

male from the time he was approximately 10 or 11 until the age of 15. He also forced the minor male to masturbate him and perform fellatio on him. He engaged in a pattern of grooming by showing the minors pornography. He also engaged in a pattern of horrific and sadistic physical abuse against the minor male. Perhaps the most troubling aspect of this abuse is the fact that the defendant engaged in all this abhorrent conduct while holding a position of love, safety, and authority as a trusted parental figure. In sexually abusing both minors, the defendant used them to guard the door while he perpetrated his abuse. His abuse was systematic, sadistic, cruel, and relentless. These children will be forever scarred by the repeated sexual abuse they endured at the hands of the defendant. This conduct certainly warrants a sentence of life imprisonment, and such a sentence would satisfy the factors of 18 U.S.C. § 3553(a).

> a.  *18 U.S.C § 3553(a)(1):  The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant*

The nature and circumstances of the defendant's crimes represent some of the most reprehensible conduct an individual can engage in, namely the sexual abuse of children. Unfortunately, while often thought of as resilient, children rarely fully recover from the trauma of sexual abuse. *See* A. Perry and D. DiLillo, Child Sexual Abuse, 147, in N.A. Jackson, Encyclopedia of Domestic Violence, (2007). Sexual trauma can affect the neurobiology of children, and such young victims of sexual abuse have more problems with anxiety, high-strung temperament, speech and language delay, inattentiveness, hyperactivity, and are at higher risk for mood disorders. *Id.* While short term effects of sexual abuse include fear, anxiety, anger, depression, and sexually inappropriate behavior, long-term effects include self-destructive behavior, tendency toward revictimization, substance abuse, and sexual maladjustment.

The reprehensible nature and circumstances of the defendant's repeated sexual abuse of these children and his history and characteristics all support a guideline sentence of life imprisonment.

> b. *18 USC § 3553(a)(2)(a): To Reflect the Seriousness of the Offense, Promote Respect for the Law, and to Provide Just Punishment*

The criminal conduct at issue here is the repeated sexual abuse of multiple children. Therefore, the question for the Court is, what sentence reflects the seriousness of these heinous crimes and provides just punishment for crimes that will have lifelong impacts on all the child victims. Anything less than a guideline sentence of life imprisonment is inadequate to reflect the seriousness of the defendant's crimes and just punishment for the harms he has inflicted upon his young victims who loved him like a father.

A sentence of life imprisonment not only reflects the seriousness of the offense and provides just punishment, but it also promotes respect for the law. Such a sentence sends a strong message that sexually abusing children will not be tolerated and offenders will be punished accordingly. A guideline sentence is necessary to promote respect for the law in the context of sexually abusing children and using pornography, grooming, and physical abuse and torture to do so.

> c. *18 USC § 3553(a)(2)(b): To Afford Adequate Deterrence to Criminal Conduct*

A guideline sentence affords adequate deterrence to future criminal conduct. It has been observed that pedophiles do not follow the same pattern of "aging out" like other offenders:

> In a study that examined the relationship between age and types of sexual crimes, Dickey (et al) found that up to 44% of pedophiles in their sample of 168 sex offenders were in the older adult age range (age, 40-70 years). When compared with rapists and sexual sadists, pedophiles comprise 60%

of all older offenders, indicating that **pedophiles offend in their later
years at a greater rate than other sexual offenders**.

*See* Ryan C.W. Hall & Richard C.W. Hall, *A Profile of Pedophilia: Definition,
Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues*, 82
Mayo Clinic Proc. 457, 458 (2007) (emphasis added). Considering the defendant's history
and what is known generally about those who offend against children, a shorter sentence
would not provide inadequate deterrence. Furthermore, a recidivism study, specific to sex
offenders, has concluded that there is no empirical basis to account for age in sex offenders
when assessing future risk of reoffending. G. Harris and M. Rice, *Adjusting Actuarial
Violence Risk Assessments Based on Aging or the Passage of Time*, 34 Crim. J. and Behav.,
310-11, (2007). Unfortunately, even if the defendant was subject to a lengthy term of
imprisonment and released as an elderly man, his age at the time of release is no indication
that he will not remain a risk to the community upon his release.

As for deterring other offenders who might be tempted to engage in similar
behavior, general deterrence is crucial. Accordingly, a sentence of life imprisonment
would afford adequate deterrence to future criminal conduct.

> d. *18 USC § 3553(a)(2)(C): To Protect the Public from Further Crimes of
> Defendant*

Given the defendant's history and his escalating sexual conduct toward minors, the
need for a sentence that protects the public—and more specifically children—from the
defendant is apparent. He repeatedly sexual abused his stepchildren to satisfy his dark and
twisted sexual desires over many years. Considering this, there can be little doubt that the
defendant is not someone who is amenable to rehabilitation, and that children are in danger
when the defendant is out of custody. A sentence of life is essential to protect the public
from future crimes of the defendant.

III.    Conclusion

A guideline sentence of life imprisonment would also avoid unwarranted sentencing disparities. The Court can and should consider sentences imposed in similar cases within the District of New Mexico:

1.  Joseph Crutcher received a 70-year sentence after molesting two children beginning in the children's infancy and continuing until his arrest when the children were nine and five years old. Crutcher also distributed child sexual abuse materials of the two children.

2.  Jason Fleming received a 45-year sentence after sexually abusing two children, one who was 9-10 years old and one who was 15-16 years old. This included producing child sexual abuse materials with the 15-16-year-old child.

3.  Gilbert Gallegos received a 45-year sentence for sexually abusing one 10-year-old child over ten months and producing child sexual abuse materials of the sexual abuse. The Tenth Circuit found 45-year sentence substantively reasonable in Gallegos' case.

4.  Matthew Lee Dale Taylor received a 45-year sentence of imprisonment for distribution of child pornography after previously sustaining a conviction for possession of child pornography. At sentencing the sentencing judge also considered evidence that Taylor sexually abused a child he had access to repeatedly when she was between the ages of five and eight years old and showed another child he had access to child pornography.

5.  Guillermo Garcia received a 30-year sentence for producing child sexual

abuse materials with a 12-year-old child. Garcia also admitted to sexually abusing another child when they were ten years old.

Significantly, in these cases, the defendants received the benefit of a plea agreement and acceptance of responsibility. After considering the number of victims involved in the present case, the age of the victims, the extent of the sexual abuse, the length of time the defendant sexually abused the children, and the extent of the manipulation and harm caused to the children from the defendant's conduct, the Court should find that a sentence of life is very appropriate, particularly given the defendant's continued lack of remorse. An individualized assessment of the 3553(a) factors in this case fully supports a sentence of life imprisonment for the defendant because he is sexual predatory who poses an extreme danger when he is out of custody. His disturbing repeated sexual abuse of children in his care and custody will have a lifelong impact on his victims. A guideline sentence is necessary to satisfy the goals of 18 U.S.C. § 3553(a).

Respectfully submitted,

RYAN ELLISON
Acting United States Attorney

*__Electronically filed 11/5/2025__*
JONI AUTREY STAHL
JACKSON K. DERING V
Assistant United States Attorneys
200 N. Church
Las Cruces, NM 88001
(575) 323-5262

14

I HEREBY CERTIFY that I filed the foregoing
pleading electronically through the CM/ECF system
which caused the following parties or counsel to be
served by electronic means, as reflected on the Notice
of Electronic Filing, and other methods of service as
indicated therein on November 5, 2025:


_____/s/_____
JONI AUTREY STAHL
Assistant U.S. Attorney